**Roy A. CEFALU, Plaintiff–Appellant,**

v.

**B.F. GOODRICH COMPANY,
Defendant–Appellee.**

No. 87–3910.

United States Court of Appeals,
Fifth Circuit.

May 9, 1989.

Prof. Michael Vitiello, John J. Messina, New Orleans, La., for plaintiff-appellant.

Walter W. Christy, Sharon S. Hearn, Elizabeth W. Middleton, New Orleans, for defendant-appellee.

Before WILLIAMS and GARWOOD, Circuit Judges, and POLOZOLA,* District Judge.

POLOZOLA, District Judge:

Seeking to recover additional pension benefits from his former employer, Roy A. Cefalu filed suit in a Louisiana state court against B.F. Goodrich Company ("Goodrich") for breach of contract under Louisiana law. Goodrich timely removed the suit to federal court. Thereafter, Goodrich moved for summary judgment. The district court found that plaintiff's state law claims were preempted by federal law and granted Goodrich's motion for summary judgment. We affirm.

I. Issues on Appeal

This case presents three questions concerning the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, as amended, 29 U.S.C. § 1001, et seq.:

(1) Is plaintiff's state law contract action to recover additional pension benefits preempted by ERISA?

(2) Does ERISA preclude enforcement of oral modifications to a written pension plan?

(3) Was the denial of severance benefits by the plan administrator arbitrary and capricious?

II. Facts and Background

Cefalu began working for Goodrich on June 4, 1959. During the time of his employment with Goodrich, Cefalu participated in the B.F. Goodrich Retirement Program for Salaried Employees ("the Plan").[1] Goodrich was the "named fiduciary" of the Plan. In September of 1985, Goodrich entered into an agreement to sell all of its assets in the division in which Cefalu was employed to Tire Center, Inc. ("TCI"). Cefalu was advised that his employment with Goodrich would be terminated on December 31, 1985.

Several options were given to Cefalu regarding his future employment and retirement benefits. Cefalu could have chosen to work for TCI. Employees who accepted employment with TCI were entitled to continued benefits under the ERISA plan because TCI was designated as a "Successor Company" as defined in Article 12 of the Plan.[2]

Cefalu was entitled to receive benefits under the Plan if he chose not to work for TCI. Pursuant to the express provisions of the Plan, Cefalu could choose to receive either a Special Deferred Vested Pension or a Lump Sum Payment.

A third option offered to Cefalu was the opportunity to purchase a franchise to operate a B.F. Goodrich retail center in Arabi, Louisiana. Cefalu accepted this offer and the parties entered into a written agreement. In Section 7(7) of the franchise

---

* District Judge of the Middle District of Louisiana, sitting by designation.

1. It is undisputed that the B.F. Goodrich Retirement Program for Salaried Employees was covered by the Employee Retirement Income Security Act of 1974.

2. Under Article 12 of the B.F. Goodrich Retirement Program for Salaried Employees, a Successor Company is defined as "any company to which assets of an operation or plant are sold or any company to which assets of an operation are transferred as part of a joint venture and which is designated as a Successor Company by the Chief Executive Officer of the Company."

agreement, Cefalu agreed that he would "not represent or hold [himself] out to be the ... employee of BFG ..." After signing the franchise agreement, Cefalu also agreed to accept retirement benefits under the Special Deferred Vested Pension Plan which entitled him to receive health coverage and pension benefits which were calculated on his years of service at Goodrich.

The plaintiff concedes that these pension benefits were properly calculated. However, Cefalu contends in his suit that representatives of Goodrich orally assured him that his retirement benefits as a franchisee would be identical to those of employees who had accepted jobs with TCI. Relying on these representations, Cefalu contends he purchased a franchise rather than electing to work for TCI. After purchasing the franchise, Cefalu states Goodrich advised him that his retirement benefits would not be the same as the employees who chose to work for TCI. Suit was then filed in state court alleging breach of contract under Louisiana law.

Goodrich denies that any oral representations or assurances were given to Cefalu to induce him to purchase a franchise. Section 23 of the franchise agreement provides that "[t]his agreement sets forth the entire Agreement between the parties hereto and has been entered into upon the inducements herein expressed and no others." Goodrich further contends that TCI did not guarantee Cefalu or any other former employee of Goodrich continued employment with TCI.[3] Thus, Goodrich contends there could be no assurance that Cefalu would have received greater retirement benefits even had he opted to accept employment with TCI.

After removing plaintiff's suit to federal court, Goodrich filed a motion for summary

judgment. In its motion, Goodrich claimed: (1) Cefalu's state law claim for breach of contract was preempted by ERISA; (2) ERISA precluded oral modifications to written pension plans; and, (3) the decision of the administrator of the Plan to deny severance pay to Cefalu was not arbitrary and capricious. The district court granted Goodrich's motion for summary judgment on each of the above grounds. This appeal seeks to overturn that decision.

### III. Does ERISA Preempt the State Law Breach of Contract Claim?

The first issue confronting the Court is whether Cefalu's state law breach of contract action to recover additional pension benefits is preempted under the provisions of 29 U.S.C. § 1144(a)[4] which provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

■ Thus, if a state law relates to an employee benefit plan, it is preempted by ERISA.[5] Appellant contends that his state law claim for breach of contract does not "relate to" the ERISA plan. More specifically, Cefalu avers that he has sued Goodrich in its capacity as plaintiff's former employer and present franchiser, but has not sued the ERISA plan. Cefalu further asserts that he is not seeking recovery from the assets of the ERISA plan or claiming more from the retirement program than the terms of the Plan specify. Instead, Cefalu claims he is merely seeking recovery from Goodrich pursuant to a valid oral contract unrelated to the ERISA plan. Therefore, Cefalu contends that since his

---

**3.** Under Louisiana law, an employee may be terminated at will unless a specific term of *employment is provided in the employment* agreement. See, La.C.C. arts. 2024, 2747; *Brannan v. Wyeth Laboratories, Inc.,* 526 So.2d 1101 (La.1988); *Cross v. Shell,* —— F.Supp. —— (M.D. La.1988), affirmed, unpublished opinion, 871 F.2d 118 (5th Cir.1989).

**4.** None of the exceptions in Section 1144(b) apply in this case.

**5.** 29 U.S.C. § 1144(c)(1) defines "State law" as "all laws, decisions, rules, regulations, or other *State action having the effect of law, of any* State." It is clear then that ERISA preempts state law *causes of action* as they relate to employee benefit plans. This is true even though the cause of action arises under a "general" state law which in and of itself has no impact on employee benefit plans.

state law claim does not "relate to" an employee benefit plan, it is not preempted by ERISA. This contention is without merit.

"[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent." [6] The express preemptive language used by Congress in ERISA is broad in scope– ... "all State laws insofar as they ... relate to any employee benefit plan" are preempted by ERISA. The express preemption of ERISA is designed to "establish pension plan regulation as exclusively a federal concern." [7] As the Supreme Court stated in *Shaw v. Delta Air Lines, Inc.* [8]

> The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected these provisions in favor of the present language, and indicated that the section's pre-emptive scope was as broad as its language.

The bill's legislative history clearly shows that Congress intended the ERISA preemption clause to have an expansive reach. [9] For example, Senator Harrison Williams stated:

> It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any in-

strumentality thereof, which have the force or effect of law. [10]

Likewise, Representative John Dent explained:

> Finally, I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation.... The conferees, with the narrow exceptions specifically enumerated, applied this principle in its broadest sense to foreclose any non-Federal regulation of employee benefit plans. Thus, the provisions of section 514 would reach any rule, regulation, practice or decision of any State ... which would affect any employee benefit plan ..." [11]

In addition, the courts have broadly construed the words "relate to" in order to give proper effect to the preemption language of ERISA. In *Pilot Life Ins. Co. v. Dedeaux,* [12] the Supreme Court stated:

> In both *Metropolitan Life, supra,* and *Shaw v. Delta Air Lines, Inc., supra,* (citations omitted) we noted the expansive sweep of the pre-emption clause. In both cases "[t]he phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" (citations omitted) In particular we have emphasized that the pre-emption clause is not limited to "state laws specifically designed to affect employee benefit plans." [13]

---

6. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985).

7. *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981).

8. 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

9. See also *Shaw v. Delta Air Lines, Inc.,* 463 U.S. at 99, n. 20, 103 S.Ct. at 2901, n. 20 (describing remarks of Senator Javits); 29 U.S.C. § 1001

(setting forth congressional findings and declarations of policy regarding ERISA).

10. 120 Cong.Rec. 29933 (1974).

11. 120 Cong.Rec. 29197 (1974).

12. 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

13. *Id.* 481 U.S. at 47, 107 S.Ct. at 1553.

ERISA's preemption clause should not "be interpreted to pre-empt only state laws dealing with the subject matters covered by ERISA." [14] Instead, ERISA's preemption of state law claims "depends on the conduct to which such law is applied, not on the form or label of the law." [15] The courts have indicated that "even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern." [16] Because of the breadth of the preemption clause and the broad remedial purpose of ERISA, "state laws found to be beyond the scope of § 1144(a) are few." [17]

The United States Supreme Court has decided two cases which have considered the issue of preemption of state law claims by ERISA. In *Metropolitan Life Ins. Co. v. Taylor,*[18] an employee brought suit against his former employer and its insurer alleging breach of contract, retaliatory discharge, and wrongful termination of disability benefits. The Court held that Taylor's common law contract and tort claims were preempted by § 1144(a) of ERISA because his lawsuit "relate[d] to [an] employee benefit plan." [19] A similar result was reached in *Pilot Life Ins. Co. v. Dedeaux,*[20] where an employee brought common law breach of contract and tort claims against the insurance company which insured his employer's group insurance policy. The Court rejected the employee's attempt to recover for the insurance company's failure to pay benefits under an ERISA-governed plan because the common law causes of action asserted in the complaint "relate[d] to" an employee benefit plan and were preempted by ERISA.

■ Applying the above statutory enactments, congressional intent, and judicial precedents, we must now determine whether appellant's state law contract action [21] "relate[s] to" an employee benefit plan. We find that appellant's state law contract claim falls within the preemptive scope of § 1144(a) of ERISA because it "relate[s] to" an employee benefit plan. A state law claim "relate[s] to" a benefit plan if it has a "connection with or reference to such a plan." [22] Appellant's claim has a definite connection to an employee benefit plan. Plaintiff concedes that if he is successful in this suit his damages would consist of the pension benefits he would have received had he been employed by TCI. To compute these damages, the Court must refer to the pension plan under which appellant was covered when he worked for Goodrich. Thus, the precise damages and benefits which appellant seeks are created by the Goodrich employee benefit plan. To use any other source as a measure of damages would force the Court to speculate on the amount of damages.

A number of circuit courts have considered claims similar to those asserted by appellant and have found these claims to have been preempted by ERISA.[23] In *Anderson v. John Morrell & Co.,*[24] plaintiff claimed he had been assured by the defendant that his fringe benefits as a member of management would be as good as those he would have received had he remained a member of a union. Plaintiff brought a breach of contract action under state law contending that these oral representations constituted part of the consideration of the management employment offer he accepted. The plaintiff argued that his

**14.** *Shaw,* 463 U.S. at 98, 103 S.Ct. at 2900.

**15.** *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1504 (9th Cir.1985).

**16.** *Alessi,* 451 U.S. at 525, 101 S.Ct. at 1907.

**17.** *Jackson v. Martin Marietta Corp.,* 805 F.2d 1498, 1499 (11th Cir.1986).

**18.** 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

**19.** *Id.* 481 U.S. at 62, 107 S.Ct. at 1546.

**20.** 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

**21.** See footnote 5.

**22.** *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900.

**23.** *See also, Jackson v. Martin Marietta,* 805 F.2d 1498, 1499 (11th Cir.1986) n. 1; *Hermann Hospital v. MEBA Medical Benefits Plan,* 845 F.2d 1286 (5th Cir.1988).

**24.** 830 F.2d 872 (8th Cir.1987).

state law claim should not be preempted by ERISA because he was not trying to enforce or clarify his rights under a benefit plan, but was merely trying to establish contractual rights to have other benefits added to the plan. The Eighth Circuit disagreed and found that plaintiff's state law claim was preempted, stating:

> Anderson would distinguish between an action to recover benefits (or enforce his rights or clarify his rights to future benefits) under the terms of a plan as it exists (in which case state law is clearly preempted ...) and an action to establish his contract right to have other benefits added to the plan (in which case he argues that state law applies). We think his distinction cannot stand, and conclude that principles of common law governing a claimed contract right to have the plan modified clearly "relates to" the plan and that state law in that area is preempted.[25]

Similarly, in *Straub v. Western Union Telegraph Co.*,[26] an employee filed a negligence and breach of contract suit because of his employer's failure to grant him an increase in pension benefits. The plaintiff also contended his employer misrepresented how his pension benefits would be affected by a transfer of his employment to a subsidiary company of his employer. The Tenth Circuit found ERISA preempted the state law claims:

> With the weight of Supreme Court and appellate opinion to the contrary, Straub's argument that ERISA cannot preempt claims that are primarily contractual in nature must fail.[27]

The Eleventh Circuit reached a similar result in *Phillips v. Amoco Oil Co.*[28] In *Phillips*, plaintiffs alleged that their employer fraudulently concealed the effect an impending sale of propane gas operations would have on their retirement benefits.

The Court held that the fraud claim raised by plaintiffs was preempted by ERISA stating:

> The compensatory damages specifically sought by the employees for the fraud claim are "compensatory damages in the form of loss of employee benefits...." This request for damages demonstrates that the employees' fraud claim not only "relates to" an employee benefit plan but is at its core an ERISA claim.[29]

Finally, in *Pane v. RCA Corp.*,[30] the defendant adopted an employee severance plan under which its Vice Presidents and General Managers were to receive lump sum termination benefits. The plaintiff was offered and accepted a severance agreement pursuant to the plan, but the defendant subsequently withheld the promised benefits. Plaintiff instituted suit contending, inter alia, that defendant breached a separate contract to include him in the severance plan and that this claim was not preempted by ERISA. He further contended that there was nothing in ERISA or in recent Supreme Court cases interpreting its preemption clause which prevented an employee from seeking state law enforcement of a non-ERISA contract. The Court concluded that "the dispute over this alleged non-ERISA agreement [was] closely tied to the issue of plaintiff's inclusion in the severance plan,"[31] and was related to an ERISA plan and preempted by ERISA.

In summary, we find that the express language of § 1144(a), its legislative history, and the jurisprudence, mandate a finding that ERISA preempts Cefalu's state law cause of action for breach of contract.

## IV. Does ERISA Preclude Enforcement of Oral Modification to Written Pension Plans?

■ Having concluded that ERISA preempts appellant's state law claim, we

---

**25.** *Id.* at 875.

**26.** 851 F.2d 1262 (10th Cir.1988).

**27.** *Id.* at 1264.

**28.** 799 F.2d 1464 (11th Cir.1986) *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).

**29.** *Id.* at 1470.

**30.** 667 F.Supp. 168 (D.N.J.1987).

**31.** *Id.* at 172.

must now decide whether ERISA precludes oral modifications to written pension plans. ERISA was enacted to "promote the interests of employees and their beneficiaries in employee benefit plans,"[32] and "to protect contractually defined benefits."[33] Under § 1102(a)(1) of ERISA," [e]very employee benefit plan shall be established and maintained pursuant to a written instrument." We find that oral agreements or modifications to a pension plan are contrary to the express provisions of ERISA. Therefore, we conclude that any oral agreements or modifications relied on by the appellant cannot support his claim for recovery herein.

The policy behind the "written instrument" clause in ERISA is to prevent collusive or fraudulent side agreements between employers and employees. But for the "written instrument" clause, employees could discriminate in favor of certain plan participants to the detriment of others. In addition, the writing requirement gives the plan's participants and administrators a clear understanding of their rights and obligations. Employees who rely on a written benefit plan should not have their benefits eroded by oral modifications to the benefit plan. Furthermore, the writing requirement protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to such under the express terms of the plan.[34] The statutory language of § 1102(a)(1) is clear and concise and must be enforced as written. To hold otherwise would not only thwart congressional purpose and intent, but would afford less protection to employees and their beneficiaries. Our conclusion is supported by decisions from the Tenth and Eleventh Circuit Courts of Appeals.

In *Nachwalter v. Christie*,[35] the issue presented to the Eleventh Circuit was whether trustees of pension and profit sharing plans governed by ERISA may be estopped from enforcing the written terms of the plans because of oral representations they allegedly made to a beneficiary. The Court concluded that § 1102(a)(1) of ERISA precludes oral modifications of written pension plans. The Court stated:

The conclusion that under ERISA oral modifications of employee benefit plans are impermissible is buttressed by the observation that Congress expressly prohibited informal written amendments of ERISA plans.... By explicitly requiring that each plan specify the amendment procedures, Congress rejected the use of informal written agreements to modify an ERISA plan. (citations omitted) Reading the "written agreement" provision of subsection 1102(a)(1) in light of subsection 1102(b)(3)'s requirement of formal written amendments procedures necessitates our conclusion that subsection 1102(a)(1) of ERISA precludes oral modifications of employee benefit plans....

A central policy goal of ERISA is to protect the interests of employees and their beneficiaries in employee benefit plans. (citations omitted) This goal would be undermined if we permitted oral modifications of ERISA plans because employees would be unable to rely on these plans if their expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to oral agreements. This problem would be exacerbated by the fact that these oral agreements often would be made many years before any attempt to enforce them.[36]

Similarly, in *Straub v. Western Union Telegraph Co.*,[37] the Tenth Circuit relied on *Nachwalter* to reject a claim asserted under an oral modification of an employee

---

**32.** *Shaw*, 463 U.S. at 90, 103 S.Ct. at 2896.

**33.** *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985).

**34.** *Cummings v. Briggs & Stratton Retirement Plan*, 797 F.2d 383, 389 (7th Cir.1986), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986); *Phillips v. Kennedy*, 542 F.2d 52, 55, n. 8 (8th Cir.1976).

**35.** 805 F.2d 956 (11th Cir.1986).

**36.** *Id.* at 960.

**37.** 851 F.2d 1262 (10th Cir.1988).

benefit plan. The *Straub* court held that "no liability exists under ERISA for purported oral modifications of the term of an employee benefit plan."[38] The Tenth Circuit further concluded that its "result is consistent with *Massachusetts Mutual Life Ins. Co. v. Russell*" as the Supreme Court "noted that ERISA's civil 'enforcement scheme [was] crafted with such evident care' that Congress did not intend for implied rights of action to supplement the express provisions."[39]

Thus, we hold that an oral agreement cannot be the basis of a cause of action under ERISA. The Court recognizes § 1132(a)(3)(B) of ERISA permits a pension beneficiary to bring a civil action to obtain "appropriate equitable relief." Under certain circumstances, federal courts may create federal common law governing employee benefit plans in order to supplement the statutory scheme.[40] However, a federal court does not have unlimited power to apply any state law doctrine it chooses to ERISA cases.[41] "A federal court may create federal common law based on a federal statute's preemption of an area only where the federal statute does not expressly address the issue before the court. (citations omitted) Furthermore, even when it is appropriate for a federal court to create federal common law, it may use state common law as the basis of the federal common law only if the state law is consistent with the policies underlying the federal statute in question."[42]

We conclude, in light of the foregoing principles, that we should not create federal common law in this case because ERISA specifically and clearly addresses the issue before this Court. ERISA expressly requires that employee benefit plans be "established and maintained pursuant to a written instrument."[43] Thus, § 1102(a)(1) precludes the creation of a cause of action based on an oral contract under ERISA.[44]

## V. Was the Denial of Severance Benefits By the Plan Administrator Arbitrary and Capricious?

The final issue confronting the Court is whether the denial of severance benefits by the plan administrator was arbitrary and capricious. This Circuit has consistently held in ERISA cases that the denial of benefits by a plan fiduciary may not be disturbed unless the decision was made arbitrarily and capriciously or in bad faith.[45] The district court found that the administrator's decision to deny Cefalu severance pay was not arbitrary and capricious. Appellant did not brief this issue on appeal or address it during oral argument. Furthermore, Cefalu made no allegations in his complaint that the actions of Goodrich were arbitrary and capricious. Appellant merely seeks severance pay as a remedy to the denial of certain pension benefits to him. Since we have concluded that ERISA preempts appellant's state law action and precludes oral modification to the pension plan, it follows that appellant is not entitled to recover severance pay under the facts of this case. Because of the decision we have reached, we express no opinion on whether the recent case of *Firestone Tire & Rubber Co. v. Bruch*,[46] will require this circuit to change its standard of judicial review on

---

**38.** *Id.* at 1265.

**39.** *Id.* at 1265.

**40.** *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1419 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986); *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1499 (9th Cir.1984).

**41.** *Nachwalter v. Christie*, 805 F.2d 956, 959 (11th Cir.1986).

**42.** *Id.* at 959–960.

**43.** 29 U.S.C. § 1102(a)(1).

**44.** The validation and enforcement of oral agreement or modifications to pension plans through estoppel also conflicts with § 1102(a)(1).

**45.** *Pierre v. Connecticut General Life Ins. Co.*, 866 F.2d 141 (5th Cir.1989); *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1303–04 (5th Cir.1985); *Ganze v. Dart Industries, Inc.*, 741 F.2d 790, 792 (5th Cir.1984); *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir. 1982).

**46.** —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

benefit determinations by plan fiduciaries or administrators under ERISA.

## VI. Conclusion

The decision of the district court is hereby AFFIRMED.