**Becky KYTLE, et al., Plaintiffs,**

v.

**STEWART TITLE COMPANY, et al., Defendants.**

**Civ. A. No. H–91–0436.**

United States District Court, S.D. Texas, Houston Division.

March 26, 1992.

John Gordon Bock, Houston, Tex., for plaintiffs.

Donald J. Horton, Houston, Tex., for defendants.

## OPINION ON SUMMARY JUDGMENT

HUGHES, District Judge.

### 1. *Introduction.*

The Kytles are seeking to recover money they expended on medical care that they claim should have been covered by their insurance through the Stewart Benefit Trust. They were not, however, covered for the month when they incurred the expenses. Their statutorily required post-termination coverage had expired, and they did not have a right to convert their insurance to a private policy. The Kytles will take nothing on their claim against Pruden-

tial Insurance Company, Stewart Title Company, Stewart Benefit Trust, and its trustees.

### 2. *Background.*

Stewart Benefit Trust provides welfare benefits to eligible Stewart Title Company employees, their spouses, and dependents. The defendants, Nita Hanks, Berri Royal, and Michael U. Thompson, are trust officers. Prudential issued a policy for the trust. Becky Kytle, her husband Kenneth, and her daughter Jennifer were all covered by the health insurance plan while Becky was employed. Because Becky was the Stewart Title employee, her husband and daughter's rights to coverage are entirely derivative of her rights.

On September 1, 1987, Stewart Title Company fired Becky Kytle. On September 14, the Trust notified Kytle of her right to continued health care coverage through COBRA. Kytle claims that Thompson assured her she would be able to convert her coverage to a private plan at the expiration of COBRA.

Kytle elected COBRA coverage for herself and her family on September 18. The notice she was given stated that her group policy ended September 1, 1987. It also mistakenly listed the date for the end of the coverage under COBRA as February 1, instead of February 28, 1989. Kytle and her family received 18 months of COBRA coverage through February 28, 1989, as the law requires.

In January 1989, Kytle notified the Trust in writing of her intent to convert her COBRA coverage to a private policy. The Trust claims that in January it notified Kytle by telephone that the conversion option was no longer available; it had been eliminated on August 1, 1988. Kytle denies that she received this telephone call. In March 1989, Kytle sent the Trust a $189 check for March, which she believed was the last month for COBRA coverage. On March 17, the Trust cashed the check. On March 30, the Trust refunded the money and informed Kytle that the COBRA coverage expired March 1, 1989. Twice in April, Kytle again applied for conversion to a

private policy. The Trust told her by telephone and in writing that conversion was no longer available. Both parties have moved for summary judgment.

3. *Issues.*

   A. Did the 18–month COBRA period expire February 28, 1989?

   B. Upon making material changes to the plan, what duty of disclosure did the Trust owe Kytle?

4. *Discussion.*

   A. COBRA coverage for the Kytles expired on February 28, 1989.

■ Kytle claims that her family's CO-BRA coverage began October 1, 1987. On her first premium payment for COBRA coverage, she made a notation on the check that the payment was for October and November. She says that her notation on the check and her understanding are supported by the Notice of Group Continuation of Health Care Coverage which, she contends, states that continuation coverage begins October 1, 1987. Kytle now argues that the Trust had a duty to report to her the apparent misunderstanding between Trust and her about when her COBRA coverage would terminate.

■ The whole purpose of COBRA is to prevent gaps in health care coverage. *Brock v. Primedica, Inc.,* 904 F.2d 295 (5th Cir.1990). Continued health care insurance under COBRA begins immediately upon expiration of the group welfare benefit plan even though the premium for that coverage is not due immediately. *Brock,* 904 F.2d 295.

When Kytle was fired on September 1, 1987, her group coverage under the plan ended. Kytle had notice of this both through the Stewart Benefit Trust Booklet and the Group Health Plan Document. She also signed the Notice of Group Continuation of Health Care Coverage, and it noted the expiration of group health care as September 1, 1987.

Kytle says she understood her COBRA coverage to begin on October 1, 1987. She was wrong. The only "October 1, 1987," on the Notice of Group Continuation of Health Care Coverage is the date payment was due for her initial premium. COBRA coverage begins immediately upon expiration of a group plan (September 1, 1987) even though the first premium is not due until later (October 1, 1987). *Brock,* 904 F.2d 295. She also seems to have been confused by the health insurance premiums that were withheld from her final paycheck. Kytle wrongly assumed that this premium covered her group health care for September. Rather, the premium deducted from her last check for work in August was the premium for the month of August. Kytle's mistake will not override ERISA's requirement that continued health insurance coverage begin immediately after the group coverage ends. 29 U.S.C. § 1162(2).

Kytle further contends that because she wrote "Oct + Nov Ins. Premiums" on her first check, the memorandum controls. Nothing that Kytle writes on her check will change the terms of her coverage. When Kytle elected COBRA coverage for herself and her family on September 18, 1987, coverage reverted to September 1, 1987, the day her group policy ended. 29 U.S.C. § 1162(2). The check she wrote on October 1, 1987, bought her health insurance for September and October of 1987. Neither Kytle nor her family had a gap in their health care coverage.

Because Kytle was not entitled to COBRA coverage through March 1989, neither was her husband or her daughter. Kenneth Kytle's claim to coverage through March is further weakened by his accepting Medicare benefits in January of 1988, which is inconsistent with his claim for COBRA coverage from that date forward.

   B. Stewart fulfilled its duty to Kytle by complying with ERISA requirements.

■ Prudential and the Trust eliminated the conversion option on August 1, 1988. The Trust exercised its reserved right to modify or terminate coverage at any time. The parties agree that this change in the policy was material.

Kytle asserts that the Trust had a fiduciary duty to inform her when it discontinued the worker's option to convert COBRA coverage to a private policy. Kytle wanted to be notified before the option was terminated in August 1988 so that she could have opted to convert before the Trust eliminated the option. All of the duties the Trust had to Kytle were defined by ERISA. *See* Plan General Provisions (I)(g); 29 U.S.C. § 1001 *et seq.* (1990).

ERISA prescribes strict reporting and disclosure requirements an employer must follow when it unilaterally terminates a provision of a medical benefit plan. When there is material modification to a plan, a summary of the change must be provided, in writing, to the participants and beneficiaries within 210 days after the end of the plan year in which the change occurs. 29 U.S.C. § 1024(b)(1); *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1295–97 (5th Cir.1989) (ERISA precludes oral modifications to employee benefits plans). If the Trust notified Kytle within 210 days of the end of the plan year in which the change occurred, then it fulfilled its duty to her. *Porto v. Armco, Inc.*, 825 F.2d 1274, 1276 (8th Cir.1987).

The Trust eliminated the conversion option on August 1, 1988. The plan year ended on November 30, 1988. The Trust had 210 days, or until June 28, 1989, to notify Kytle of the change. After oral notification, the Trust notified her in writing of the change on May 24, 1989. By complying with the disclosure and reporting requirements of ERISA, the Trust fulfilled its duty to Kytle. *Porto*, 825 F.2d at 1276.

Theoretically, a plan administrator can make a material change and not notify the participants for 574 days. For simple decency and efficiency, plan administrators should notify participants of material changes before they are made. The law, however, does not demand it.

5. *Conclusion.*

Becky Kytle was not covered by health insurance in March 1989. Because Kenneth Kytle's rights are derivative of his wife's rights, he was not covered in March

either. After August 1, 1988, neither Becky nor Kenneth Kytle had a right to opt for a conversion to a private policy. The benefits of a plan cannot be enlarged by the trustee or a beneficiary. While it would have been helpful to the Kytles if the Trust had warned them of the elimination of the conversion option, ERISA does not require prior or even immediate disclosure of material changes. The Trust notified Kytle of the change within the 210–day time period. ERISA, not compassion, defines the duty the Trust had to Kytle, and this restricted duty is ultimately to the benefit of the working people of America who would be unable to obtain these fringe benefits at all without the plan's statutory immunity to claims for enlargement.