**UNION HEALTH CARE, INC. d/b/a Laird Hospital, Plaintiff,**

**v.**

**JOHN ALDEN LIFE INSURANCE COMPANY, Mississippi Administrative Services, Inc., Kenneth W. Jones and John Does 1 through 10, Defendants.**

**No. 4:95CV83LN.**

United States District Court,
S.D. Mississippi,
Eastern Division.

Sept. 7, 1995.

Glover A. Russell, Jr., John P. Sneed, Phelps Dunbar, Jackson, MS, for Plaintiff.

Steven H. Begley, John E. Hughes, III, Wells, Well, Marble & Hurst, Jackson, MS; Larry Joseph Lee, Sr., Lee & Grenvell, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Union Health Care, Inc. d/b/a Laird Hospital (Laird) to remand pursuant to 28 U.S.C. § 1447. Defendant John Alden Life Insurance Company (John Alden) and defendants Mississippi Administrative Services, Inc. and Kenneth W. Jones (collectively MAS) have responded in opposition to the motion. The court, having reviewed the parties' memoranda of authorities, together with the record in this cause, concludes that Laird's motion to remand should be granted.

■ The parties' dispute on the present *motion is whether Laird's claims in this ac*tion are preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq., such that removal jurisdiction is prop*er. In 1993, Laird established the Laird Hospital Employee Benefit Plan to provide health benefits, including hospitalization and major medical benefits, to its employees and their eligible dependents. Apparently, the plan was initially wholly self-funded and administered by Laird. In 1991, however, Laird hired MAS to provide administrative services for the plan, including claims processing, and at the same time procured an excess risk reinsurance policy, commonly referred to as stop-loss insurance, from John Alden.[1] That policy, which was in effect from April 15, 1991 through May 1, 1993, provided that John Alden would reimburse Laird for claims under Laird's plan which exceeded $25,000 per person during a policy period, and further provided indemnity against aggregate claims exceeding a prescribed amount in a given year.

According to Laird, at some point in late 1994 or early 1995 it learned that MAS had neglected to notify it of certain specific stop-loss and aggregate claims incurred during the 1992 and 1993 policy periods. Concerned that MAS might also have failed to inform John Alden of these claims, Laird notified John Alden of the claims in February 1995 and sought reimbursement under its excess contract with John Alden. John Alden denied coverage, however, asserting that it had not received timely notice of the claims in

---

1. "Stop loss insurance is acquired by a self-insurer to protect against excessive claims. A stop-loss insurer reimburses a self-insured for all or an agreed upon portion of actual claims that exceed an amount preset by the insurer and self-insured." *Reich v. Lancaster*, 55 F.3d 1034, 1040 n. 4 (5th Cir.1995).

accordance with the terms of its policy.[2] It advised additionally that even if notice of the claims was timely, the claims still were not payable as certain information needed to process the claims had not been provided.

Laird submits that although it subsequently furnished the information which John Alden required, John Alden persisted in its refusal to pay the claims. Laird therefore filed the present suit in the Circuit Court of Newton County, Mississippi against John Alden and MAS asserting various state law causes of action. Against John Alden, Laird alleged a claim for breach of contract based on its contention that John Alden, despite receiving timely notification of the subject claims, failed to pay benefits due under its contract. Laird alternatively alleged against MAS that if it were ultimately found to be precluded from recovery against John Alden because of a failure to give timely notice of the claims, then MAS would be liable to it for the amount of the claims based on MAS's negligently having failed to timely notify John Alden and/or Laird of the claims in breach of its contractual obligation to furnish such notice, and in breach of a fiduciary duty to Laird.

Defendants removed the case to federal court, contending that plaintiff's state law claims are preempted by ERISA. Laird disputes ERISA's applicability and has moved to remand. If ERISA preempts Laird's claims against either defendant, the case would have been properly removed to this forum. The court concludes, though, that none of Laird's causes of action in this case is governed by ERISA. Plaintiff's motion will therefore be granted.

As an initial matter, the court observes that the plan established by Laird for the benefit of its employees and their dependents is an employee benefit plan governed by ERISA. About this, the parties are in complete accord. ERISA comprehensively regulates such plans, and toward that end, includes a broad preemption provision: Under ERISA, "any and all state laws," whether they be laws aimed at employee benefit plans or merely generally applicable laws, are preempted "insofar as they ... relate to any employee benefit plan." 29 U.S.C. § 1144(a). But while ERISA preemption is broad, it is not limitless; and it does not extend to state causes of action that affect employee benefit plans in "too tenuous, remote, or peripheral a manner." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 100 n. 21, 103 S.Ct. 2890, 2900, 2901 n. 21, 77 L.Ed.2d 490 (1983).

In this case, John Alden reasons that Laird's claim against it obviously "relates to" Laird's ERISA plan since John Alden's contract with Laird specifically incorporates the terms and provisions of Laird's ERISA plan and covers only charges paid by Laird in strict compliance with that plan. It concludes, then, that Laird's claim against it must be preempted. The court concludes otherwise.

It is true, as John Alden points out, that the relationship between Laird and John Alden stems from Laird's plan. The court similarly recognizes that John Alden's excess policy is "related to" the Laird plan to the extent that claims for stop-loss and aggregate loss benefits are not payable under the terms of John Alden's policy unless they fall

---

**2.** It specifically objected that notice was not given within thirty days of the date the insured had "paid eligible expenses on behalf of a covered person," or within a year of the date notice would otherwise have been required, in contravention of the following policy provisions:

The insured shall give written preliminary notice to the Company of any claim, for which benefits may be payable hereunder, that is equivalent to or exceeds 50% of the specific deductible amount. Failure of the insured to furnish written notice within thirty days shall not invalidate or reduce its claim if it was not reasonably possible to give such written notice within such time; provided that such written

notice is furnished as soon as possible, but in no event later than one year after the date that written notice of the claim is otherwise required.

The Company shall have the sole authority to pay or deny claims which exceed any excess loss coverage attachment point or specific deductible amount. Claims shall be administered by the Company or its authorized representative. Claims must be submitted within thirty days after the insured has paid eligible expenses on behalf of a covered person. All benefits will be paid to the insured as they become payable under this policy.

within the coverage provisions of Laird's plan. It does not necessarily follow, though, that Laird's claim against John Alden for its denial of coverage under John Alden's excess policy is "related to" Laird's ERISA plan as contemplated by ERISA's preemption provision.

A broad range of claims have been the subject of ERISA preemption analysis. Some claims are obviously preempted, such as claims by ERISA plan beneficiaries for plan benefits, *see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); others clearly fall outside ERISA's preemptive reach, such as when an employee benefit plan acts as an employer or shareholder, *see Sommers Drug Stores Co. Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456 (5th Cir. 1986). Most, like those presently at issue, lie somewhere in between and the court's function is to determine whether they sufficiently "relate to" an ERISA plan to support a finding of preemption.

The Fifth Circuit has long placed the focus of the preemption inquiry on how the resolution of the cause of action will affect relationships regulated by ERISA. On this point, the court has explained:

> The most important factor for a court to consider in deciding whether a state law affects an employee benefit plan "in too tenuous, remote, or peripheral a manner to be preempted" is whether the state law affects relations among ERISA's named entities. "[C]ourts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries— than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan."

*Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 249 (5th Cir.1990) (quoting *Sommers Drug Stores,* 793 F.2d at 1457); *see also Hook v. Morrison Milling Co.,* 38 F.3d 776, 781 (5th Cir.1994); *Perkins v. Time Ins. Co.,* 898 F.2d 470, 473 (5th Cir.1990). The court has reasoned that the "bargain" Congress struck by granting plan beneficiaries the many protections of ERISA in exchange for their relinquishment of state rights does not encompass entities which were not parties to the bargain. *Memorial Hosp. Sys.,* 904 F.2d at 249.

In *General American Life Insurance Co. v. Castonguay,* 984 F.2d 1518 (9th Cir.1993), the Ninth Circuit echoed the Fifth Circuit's view regarding the significance of ERISA relationships in the preemption inquiry, stating:

> · The key to distinguishing between what ERISA preempts and what it does not lies, we believe, in recognizing that the statute comprehensively regulates certain *relationships:* for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved).... Because of ERISA's explicit language, ... and because state laws regulating these relationships (or the obligations flowing from these relationships) are particularly likely to interfere with ERISA's scheme, these laws are presumptively preempted..

> But ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity—*for instance, the relationship between* the plan and its own employees, or *the plan and its insurers or creditors,* or the plan and the landlords from whom it leases office space. State law is allowed to govern these relationships, because it's much less likely to disrupt the ERISA scheme than in other situations. Moreover, if these relationships were governed by federal law, federal courts would have to invent a federal common law of contracts, torts, property, corporations—something that would run against the grain of our federal system....

> To determine whether a state law is preempted we must look at whether it encroaches on the relationships regulated by ERISA. State tort and contract causes of action, for instance, don't apply to transactions between plans and their participants, ... because the relationship between plan and participant is, under ERISA, a matter of exclusively federal

concern.... Wrongful discharge laws don't apply to employee terminations carried out to avoid benefit payments, because the employer-employee relationship is—insofar as it deals with benefit plans—also an exclusively federal matter.... *State law can, however, apply to transactions between plans and their creditors or their landlords or their own employees, because those relationships are outside ERISA's purview.*

*Id.* at 1521–22 (emphasis added and citations omitted). Under this approach, which is the same as that applied in this circuit, the first question to be asked is "whether the state law reaches a relationship that is already regulated by ERISA." *Id.* That question must be answered in the negative as it pertains to the relationship between John Alden and Laird, for while Laird is certainly an ERISA entity, John Alden is not. Rather, the relationship here involved is that between the employer/plan sponsor and its insurer, i.e., between a standard ERISA entity and a third party. And the fact that ERISA is lurking in the background does not alter the fact that this is simply a contract dispute between these parties.

█ In its attempt to persuade the court that ERISA governs this action, John Alden proclaims itself an ERISA fiduciary. While its motivation for such a declaration in the context of the present motion is apparent, the basis for such an assertion is not. Indeed, the court concludes without difficulty that John Alden is not a plan fiduciary. In this regard, ERISA provides that

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation ..., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

John Alden does not qualify as a fiduciary according to this definition.

In *Bromenn Healthcare v. Northwestern National Life Insurance Co.,* 806 F.Supp. 799, 805 (C.D.Ill.1992), the issue of whether a stop-loss insurer, Northwestern, qualified as an ERISA fiduciary was held to turn on whether its reimbursement of money allegedly owed for payments under the plan could properly be characterized as funds belonging to the plan:

In other words, does the retention of monies allegedly owed to the Plan fund constitute Plan assets that touch an essential fiduciary duty owed to the Plan, participants, or beneficiaries. Northwestern otherwise has no discretionary authority with regard to the Plan.... [To occupy a fiduciary status], Northwestern must have had control or authority over Plan assets.

*Id.* The court concluded:

Northwestern, as the excess risk insurer, control[led] only its own assets, not the assets constituting Plan funds. *A mere contractual relationship with the plan sponsor will not transform an insurance company into an ERISA fiduciary unless at some point that insurer exercises some control or authority over the Plan, participants or beneficiaries.* If the Subscription Agreement provided that Northwestern paid the actual benefits as opposed to reimbursing the Plan for benefits actually paid, this finding might be different. The contract between Northwestern and Bromenn, however, did not establish the plan, affect benefits paid from the Plan, affect eligibility, or touch any other cognizable duty owed to the Plan, participants or beneficiaries. Therefore, Northwestern fails to satisfy the requisites of an ERISA fiduciary.

*Id.* at 804–05 (emphasis added). *See also Downey Community Hosp. v. Sterling Investors Life Ins. Co.,* 977 F.2d 470, 474 (9th Cir.1992) (stop-loss insurer was "neither a participant, fiduciary, nor a beneficiary of the plan"); *Fox, Curtis & Assocs., Inc. v. Employee Benefit Plans, Inc.,* No. 92C5828, 1993 WL 265474, at * 4, 1993 U.S. Dist. LEXIS 9456, at *13 (N.D.Ill. July 13, 1993) (ERISA did not preempt breach of contract claim by employer against reinsurer since "ERISA need not preempt suits involving relationships between ERISA entities (employer, plan fiduciary; or plan beneficiary) and third

parties"); *Consumer Benefit Ass'n v. Lexington Ins. Co.,* 731 F.Supp. 1510, 1516 (M.D.Ala.1990) (reinsurer was not fiduciary to ERISA plan offered by employer). This reasoning applies with equal force to John Alden in the case *sub judice.* For the same reasons that Northwestern failed to qualify as an ERISA fiduciary in *Downey Community Hospital,* John Alden does not occupy the status of an ERISA fiduciary with respect to Laird's plan.[3]

The fact that John Alden is not a plan fiduciary, and could in no sense be considered a traditional plan entity, strongly suggests that ERISA does not preempt Laird's claim against John Alden. Moreover, from the conclusion that John Alden is not a fiduciary with respect to Laird's plan, it follows that there is no cause of action or remedy available to Laird under ERISA for John Alden's alleged breach of contract.[4] Consequently, were Laird's claim against John Alden preempted by ERISA, Laird would have no recourse against John Alden for its alleged breach of its reinsurance contract. In the court's opinion, the absence of a remedy also counsels against preemption.

The Fifth Circuit has not invariably conditioned ERISA preemption on the availability of a federal remedy. To the contrary, that court has quite clearly rejected the argument that the scope of preemption necessarily turns on the scope of ERISA's civil enforcement provision, *Lee v. E.I. DuPont de Nemours & Co.,* 894 F.2d 755, 756–57 (5th Cir. 1990), and has explicitly held that there are circumstances in which ERISA preemption may occur even though ERISA itself does not offer the aggrieved party a remedy. *See Memorial Hosp. Sys.,* 904 F.2d at 248. A review of the Fifth Circuit's cases on this issue discloses that the determination of how the absence of an ERISA remedy should

affect the preemption analysis depends largely on whether the recognition of the need for a remedy would further the purposes and goals of ERISA. Because in this case the court views the obvious absence of an available remedy under ERISA as inimical to the goals of ERISA, it thus becomes a compelling consideration in its analysis of the preemption issue as it relates to Laird's claim against John Alden.

Each of the cases in which the Fifth Circuit has found state law claims preempted, even though ERISA itself provided no remedy, involved a claim by an employee who alleged that he relied to his detriment on misrepresentations by his employer regarding the benefits available to him under his employer's ERISA plan. *See Lee,* 894 F.2d at 757; *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290 (5th Cir.1989); *Degan v. Ford Motor Co.,* 869 F.2d 889 (5th Cir.1989). In each case, the court reasoned that to allow a claim for benefits for which the plan did not, in fact, provide would conflict with ERISA's emphatic requirement that employee benefit plans be embodied by a written instrument, and would thereby have the potential to undermine "the plan's actuarial soundness." *Cefalu,* 871 F.2d at 1296. "To hold otherwise," the court has reasoned, "would not only thwart congressional purpose and intent, but would afford less protection to employees and their beneficiaries." *Id.*

However, in *Memorial Hospital System,* the court refused to extend that principle to encompass a claim by a third-party medical provider which sued a plan for damages for having misrepresented that coverage was available under the plan for a certain individual when, in fact, that individual was not eligible for coverage. *Memorial Hosp. Sys.,* 904 F.2d at 248. In that situation, the fact that ERISA provided no remedy to the pro-

---

3. In fact, John Alden's policy provides clear evidence that John Alden did not intend to, and did not become a plan fiduciary inasmuch as it provides:

The parties to this Policy are the Insured (Laird) and the Company. This Policy does not create any right or legal relation whatsoever between the Company and a Covered Person or beneficiary under the Policyholder's Plan. The Company shall not have any responsibility or obligation under the Policy to directly reimburse any Covered Person or provider of professional or medical services for any benefits which are provided under the terms of the Insured's Plan. The Company's sole liability hereunder is to the Insured.

4. The parties agree that since Laird is not seeking injunctive or equitable relief, 29 U.S.C. § 1132 provides an ERISA cause of action only against an ERISA fiduciary.

vider against the plan militated against a finding of preemption since depriving the provider of a remedy "[ran] counter to one of Congress's overriding purposes in enacting ERISA," protecting the interests of employees and their beneficiaries in employee benefit plans. The court reasoned that if providers were to have no recourse in the case of a plan's erroneous verification of coverage, providers might be unwilling to accept the risk of non-payment for services and might require up-front payment by beneficiaries before offering treatment.

A finding that ERISA preempts claims for breach of reinsurance contracts such as that here involved would not further ERISA's purposes, and would have the tendency to deleteriously affect the financial soundness of ERISA plans. Such a result, which would "foreclose relief, both coming and going," for parties to such reinsurance agreements, *Consumer Benefit Ass'n*, 731 F.Supp. at 1517, would run counter to congressional purpose and intent, for as one court has aptly observed:

> It does not take much foresight to see that the inability of plan insurers to enforce valid contracts, in particular reinsurance contracts, would have a direct and substantial adverse financial effect on ERISA plans. First of all, plan insurers that rely on reinsurance for fiscal stability would no longer be able to do so, with the result that the ability of these insurers to meet plan obligations would be jeopardized. Moreover, restricting the ability of insurers to enforce reinsurance contracts would most certainly discourage them from even entering into insurance contracts with ERISA plans.

*Id.*

John Alden argues, finally, that the subject claim is related to Laird's plan since "[r]eference must be made to the Plan in order for John Alden or the court to properly determine any liability under the policy." It further asserts that there is an issue between the parties as to whether there is "coverage" for Laird's claims. By this assertion, John Alden obviously seeks to imply that there is a dispute between the parties as to whether Laird's payments to ostensible plan beneficiaries were, in fact, properly paid. Significantly, though, John Alden, which bears the burden to demonstrate the propriety of removal jurisdiction, *see Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir.1988), has not shown that reference to any part of Laird's plan will be required to resolve the parties' controversy. Yet, the court is persuaded in any event that under the circumstances here presented, the fact that reference to the terms of Laird's plan might be required to resolve Laird's claim constitutes an "incidental relation to an ERISA plan that is insufficient . . . to require a finding of preemption." *Memorial Hosp. Sys.*, 904 F.2d at 247 (rejecting argument for preemption grounded on fact that health care provider's damages, if it were to prevail, would be measured by benefits it would have received had there been no misrepresentation, and noting that claim at issue was "unrelated to [participant's] right to benefits under the plan); *see also Fox, Curtis & Assocs. v. Employee Ben. Plans, Inc.*, No. 92C5828 (N.D.Ill. July 13, 1993) (holding under similar circumstances that "[t]he extent to which the plan documents will have to be reviewed in adjudicating the merits of [the employer's] claims, if at all, is merely ancillary to an examination of the terms of the agreement between [the employer] and Defendants."). For all of the foregoing reasons, the court concludes that ERISA does not preempt Laird's claims against John Alden.

Laird does not allege in its complaint, nor contend in its briefs, that MAS made any payment under the plan in error or was not in strict compliance with the terms of Laird's plan. Rather, the *only* claim asserted against MAS is that it failed to timely notify John Alden of excess claims. In the court's opinion, this claim is not preempted.

This claim does not relate to MAS's responsibilities to the plan or its participants, with respect to which duties it has a fiduciary relationship. Rather, the claims asserted in this case relate solely to MAS's duties vis-a-vis the reinsurance contract. Assuming MAS had a duty to give John Alden notice of excess claims, it was simply a duty owed to Laird for Laird's benefit, and not for the benefit of the plan and/or its participants. *See Landry v. Air Line Pilots Ass'n Intern. AFL–CIO*, 901 F.2d 404, 417 (5th Cir.1990) (quoting *Sommers Drug Stores, Co.*, 793 F.2d

at 1459–60) ("a person is a fiduciary [under ERISA] only with respect to those aspects of the plan over which he exercises authority or control").

Manifestly, ERISA preemption of state law claims is required where the resolution of those claims would challenge or interfere with plan administration. But that is not the case here. Defendants do not contend, and the court perceives no basis for concluding that a determination of the claims brought by Laird will have any effect on the primary administrative functions of Laird's benefit plan. *See Fox, Curtis & Assocs. v. Employee Ben. Plans, Inc.,* No. 92C5828 (N.D.Ill. July 13, 1993) (claim against third-party administrator and stop-loss insurer alleging breach of contract not preempted since "any effect that Defendants' breach of their obligations may have on plan beneficiaries is incidental to [employer's] claims"). Accordingly, ERISA does not preempt the claims at bar and there is otherwise no basis for this court's exercise of jurisdiction.[5]

Therefore, it is ordered that plaintiff's motion to remand is granted.

ORDERED.

---

**5.** The court is aware of those cases cited by defendants in support of their arguments against remand. The court rejects the reasoning employed and conclusion reached by the courts in *Lanter Co. v. D.B.L. Services, Inc.,* 1994 WL 285470 (S.D.Ill.1994), and *Ampere Automotive Corp. v. Employee Benefit Plans, Inc.,* 1992 WL 220912 (N.D.Ill.1992), and considers the remaining cases inapposite.