BYE, Circuit Judge,
dissenting.
I respectfully dissent from the decision to affirm the bankruptcy court’s denial of Sean Deckard’s claim for civil penalties against Hostess for the latter’s failure to provide Deckard with statutorily mandated COBRA notices. In addition, I respectfully dissent from the decision to affirm the bankruptcy court’s denial of Deckard’s request for attorney’s fees.
It is undisputed that Sean Deckard suffered a six-month gap in his health care coverage as a result of Hostess’s conceded failure to comply with COBRA notice requirements. Avoiding a gap in medical coverage is the main purpose of the COBRA notice requirements. See Livingston v. S.D. State Med. Holding Co., Inc., 411 F.Supp.2d 1161, 1169 (D.S.D.2006) (“COBRA’S purpose is to prevent gaps in health care coverage.”); Simpson v. T.D. Williamson, Inc., 321 F.Supp.2d 1240, 1245 (N.D.Okla.2003) (“[T]he core purpose of *539 COBRA ... is to insure continued medical coverage [is] available to workers and their families who face changes in their lives.”); Kytle v. Stewart Title Co., 788 F.Supp. 321, 323 (S.D.Tex.1992) (“The whole purpose of COBRA is to prevent gaps in health care coverage.”).
Under the summary judgment record considered by the bankruptcy court, it is also undisputed that Deckard was forced to forego treatment for his health issues during the gap in his health care coverage. Foregone or delayed medical treatment is one of the principle harms sought to be avoided by COBRA, and the presence of that factor alone constitutes sufficient prejudice to award statutory penalties. See Holford v. Exhibit Design Consultants, 218 F.Supp.2d 901, 909 (W.D.Mich.2002) (determining foregone health care treatments constitutes prejudice when a COBRA violation occurs); Fadalla v. Life Auto. Prods., Inc., No. 2:06-CV-02679, 2009 WL 3295369, at *3 (W.D.Tenn. Oct. 13, 2009) (awarding $55 per day in statutory penalties because “[plaintiffs were without medical coverage for approximately three months and suffered some prejudice during that time. Mrs. Fadalla had an ectopic pregnancy, and, because she had no health insurance, several medical procedures were delayed by at least two weeks” and finding prejudice “[d]espite Defendants’ retroactive application of COBRA coverage and the reimbursement for Plaintiffs’ out-of-pocket medical expenses during their period of no coverage.”); cf. Marquez v. Drugs Unlimited, Inc., No. 08-2387, 2010 WL 1133808, at *10 (D.P.R. Mar. 22, 2010) (concluding plaintiffs need to “forgo some psychological treatment ... presented a material issue of fact with regard to whether or not she was in fact prejudiced by Defendants’ delay in informing her of her COBRA benefits”).
In denying statutory penalties, the bankruptcy court essentially ignored the gap in health care coverage through which Deckard suffered and placed too much emphasis on Hostess’s post-litigation reinstatement of health care coverage. In Holford, the court awarded a statutory penalty, disregarding an employer’s after-the-fact “attemptf] to right the situation by offering to Plaintiff COBRA coverage retroactive to the effective date of her separation.” 218 F.Supp.2d at 905. The court stated that while the employer’s “new-found knowledge and respect for COBRA” was “laudable [it] is not the true test for determining sanctions aimed at deterrence.” Id. at 905 & n. 2:
As in this Court’s criminal cases, many defendants express respect and allegiance to the laws of the land while their deeds are being weighed in the balances of justice. The legitimate goal of deterrence (which is the object of the civil fine provision applicable in this case) is to see that litigants will observe the same respect for the laws when the courts are afar off and their conduct is hidden.
Id. at 905 n. 2.
In this case, there was abundant evidence that Hostess acted in bad faith before it got “caught,” so to speak. Hostess’s pre-litigation conduct included (1) its cancellation of Deckard’s health benefits retroactive to September 2006 even though the collective bargaining agreement (CBA) required it to provide Deckard benefits through September 2007; (2) its failure to even notify Deckard it was cancelling his coverage, leaving him to discover the cancellation when a prescription order was refused; (3) its attempts to “claw back” the health benefits it had provided Deck-ard from September 2006 through August 2008, even though it was obligated to cover some of those health benefits under the *540 terms of the CBA; (4) its failure to assist Deckard in responding to collection efforts made by health providers and bill collectors after the retroactive cancellation of his insurance; (5) its failure to acknowledge its COBRA violations even after Deckard’s mother brought the violation to its attention; and (6) its lack of evidence of record-keeping requirements to support the claim that its failure to provide COBRA notice was just an oversight rather than a blatant disregard for COBRA requirements. Thus, in my view, the bankruptcy court clearly abused its discretion by not giving enough weight to Hostess’s pre-litigation conduct as evidence of its bad faith, and placing too much weight on the post-litigation damage control Hostess undertook after Deckard was forced to hire legal counsel and initiate litigation to assert his COBRA rights.
Even if we assume the bankruptcy court was within its discretion to deny the claim for civil penalties, the denial of Deckard’s request for attorney’s fees was plainly wrong and an abuse of discretion. In Starr v. Metro Systems, Inc., we held a district court abused its discretion in failing to award attorney’s fees to a plaintiff who successfully proved a defendant’s COBRA violation notwithstanding our affir-mance of the district court’s denial of the claim for civil penalties. 461 F.3d 1036, 1041 (8th Cir.2006). In reversing the denial of attorney’s fees, we discounted the COBRA defendants’ success “in showing that they did not act in bad faith” for purposes of awarding civil penalties and instead focused on the COBRA plaintiffs “clear[ ] succe[ss] in establishing a meritorious claim that defendants failed to comply with COBRA’s notice requirements.” Id. Significantly, when making the critical distinction between success on a claim for civil penalties and success in proving the COBRA violation itself, Starr rejected the defendants’ claim that the issue of “success on the merits” should be considered a “toss-up” because “the defendants survived a motion for summary judgment.” Id. We expressly stated the “defendants’ survival of summary judgment deserves little, if any, weight as a showing of the relative merits.” Id. In this case, Hostess had no choice but to concede at the summary judgment stage that it had violated COBRA, because there were simply no triable issues of fact with respect to that critical issue. In other words, the critical focus in determining “success on the merits” status for purposes of awarding fees in a COBRA case such as this is not whether a plaintiff successfully proves a claim for civil penalties, but whether a plaintiff successfully proves that COBRA’s notice requirements were violated. Deckard clearly succeeded in establishing a meritorious claim that Hostess failed to comply with COBRA’s notice requirements.
In addition, when considering whether Deckard succeeded on the merits for purposes of awarding fees, it is significant that Hostess reinstated Deckard’s healthcare coverage only after Deckard initiated legal action. Although a voluntary change in the defendant’s conduct cannot be considered for determining “prevailing party” status, see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep’t of Health and Human Res., 532 U.S. 598, 600, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), that principle has no application in determining “success on the merits” under 29 U.S.C. § 1132(g)(1). See Hardt v. Reliance Standard Life Ins. Co., 560 U.S. -, 130 S.Ct. 2149, 2157, 176 L.Ed.2d 998 (2010) (specifically distinguishing Buckhannon for purposes of determining “success on the merits” under § 1132(g)(1)). Thus, I believe Hostess’s reinstatement of coverage should also be considered part of Deckard’s success on the merits, because Deckard’s litigation was the catalyst in having his health cover *541 age restored. See Feldman’s Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc., 898 F.Supp.2d 883, -, 2012 WL 4514526 at *10 (D.Md. Sept. 28, 2012) (discussing those cases which support application of the catalyst theory for awarding fees under § 1132(g)(1)).
For the reasons stated, I respectfully dissent.