[No. 36652-1-I.   Division One.   February 3, 1997.]

BEHAVIORAL SCIENCES INSTITUTE, *Respondent*, v. GREAT-WEST LIFE, *Appellant*.

864

*Michael B. King, John R. Neeleman, Jeffrey Gingold,* and *Lane Powell Spears Lubersky,* for appellant.

*Scott A. Milburn* and *Preston, Gates & Ellis,* for respondent.

COLEMAN, J. — In 1990 and 1991, Great-West Life (GW) contracted to provide administrative services and excess or "stop-loss" coverage to Behavioral Sciences Institute (BSI), who self-insured an Employment Retirement Income Security Act of 1974 (ERISA) Plan for its employees. In late 1988, BSI employee Elaine Sonntag-Johnson had discovered that she had a rare blood disorder requiring expensive treatment. GW refused to provide stop-loss coverage, claiming that the employee's condition was not covered under the Plan and that BSI's Plan administrator acted in bad faith by not disclosing the condition. BSI sued GW, alleging breach of contract and bad faith. The court granted BSI summary judgment, holding that BSI had sole authority to determine Plan eligibility. GW argues that ERISA preempts BSI's state law claims. Alternatively, GW argues that the court erred in holding that it had no standing to challenge BSI's eligibility determination. We hold that ERISA does not preempt because this case does not involve the interpretation of an ambiguous ERISA provision or parties or claims covered by ERISA. We further find that GW can challenge Sonntag-Johnson's Plan eligibility insofar as it affects GW's obligation to provide reinsurance because the parties' agree-

ment does not provide BSI with absolute discretion. We thus reverse.

## PROCEDURAL HISTORY

In October 1994, BSI moved for summary judgment declaring that GW could not challenge the Plan administrator's determination that Sonntag-Johnson's claims were covered under the ERISA Plan. The court granted BSI's motion. In January 1995, GW moved for summary judgment, declaring that ERISA preempted BSI's state law claims; BSI made a cross motion to dismiss GW's counterclaim. GW's motion was denied and BSI's was granted. In February 1995, GW brought a motion for summary judgment asking the court to reconsider its October ruling based on evidence that BSI acted in bad faith and that no discretion was required to determine Plan eligibility. The court denied the motion as an untimely motion for reconsideration. The case was scheduled for trial on BSI's remaining bad faith claim, but further proceedings were stayed pending the outcome of this appeal.

## FACTS

BSI established a self-insured ERISA Plan to provide health and welfare benefits to its employees. It contracted with GW to provide reinsurance coverage for the Plan effective January 1, 1990. Before this date, King County Medical Blue Shield had provided such coverage.

When negotiating coverage from GW, BSI Plan administrator Rhonda Watson informed GW in late 1989 that no BSI employees had claims in excess of $5,000 in the past 12 months, had preexisting conditions or would have medical or surgical treatment in 1990, or were prevented from performing their normal duties for more than two consecutive weeks during the past 12 months.

GW agreed to reimburse BSI for benefit payments made under the Plan provisions. The parties' agreement stated

that GW was not a party to the Plan, had no control respecting the Plan's management, and had no obligation to any employee or dependent under the Plan.

The Plan provided that a BSI employee hired before July 1, 1991, was eligible for coverage if he or she paid the required contribution, if any, and was "at work" the day services were needed. If the employee did not satisfy these two requirements, no benefits would be paid for

> [s]ervices or supplies received for a **Pre-Existing Condition** unless they are received after the earlier of:
>
> The last day of a three-month period:
>
> — which ends on or after the date the **Covered Person's** coverage begins; and
>
> — during which time no services or supplies were received for the condition; or
>
> — The date on which the **Covered Person's** coverage has been in effect for 12 consecutive months under this **Plan**.

BSI employee Elaine Sonntag-Johnson was diagnosed with a rare blood disorder called paroxysmal nocturnal hemoglobinuria (PNH) in November 1988. According to Watson's declaration, Sonntag-Johnson was officially on vacation or sick leave from December 21 until January 1, 1990, when she became ill with PNH. She was admitted to the hospital on January 2, 1990, and did not return to work for several months.

Watson determined that Sonntag-Johnson was actively "at work" at 12:01 A.M. on January 1, 1990, and was thus covered under the Plan as it went into effect for 1990. Watson reasoned that Sonntag-Johnson was merely out with the flu in late December or on vacation and was not disabled with her illness until January 1, the day that GW began providing stop-loss coverage to BSI.

GW received extensive claims for Sonntag-Johnson in early 1990. GW's senior customer service supervisor Cindy Nelson became suspicious and initiated an investigation.

GW disputed whether Sonntag-Johnson's expenses were covered under the Plan and subsequently refused to reimburse BSI. In particular, GW questioned whether Sonntag-Johnson was in fact "at work" on January 1, 1990, and whether BSI had concealed her preexisting condition.

BSI's prior reinsurer, King County Medical, granted a 12-month extension of benefits when it learned of Sonntag-Johnson's diagnosis based on a finding that she was disabled on January 1, 1990. The extension expired on January 1, 1991, at which time Sonntag-Johnson was enrolled in the GW Plan, having met the actively at work requirement. Thus, benefits for 1990 are not in dispute. The parties further agree that Sonntag-Johnson became generally eligible for GW coverage when she returned to work full-time on January 1, 1991, but dispute whether the coverage excluded her preexisting PNH condition.

Sonntag-Johnson sued GW and BSI in Superior Court, seeking $27,028.62 in unpaid PNH-related medical expenses for 1991. Because the suit alleged a claim for benefits under ERISA, GW removed the case to federal district court and moved to dismiss. The federal court determined that because ultimate authority for determining coverage rested with BSI's Plan administrator, GW was not a fiduciary. The court thus dismissed Sonntag-Johnson's claim against GW. Sonntag-Johnson subsequently dropped her suit against BSI, and BSI reimbursed her for PNH-related expenses incurred in 1991.

BSI next sued GW in Superior Court, seeking to recover the money it had paid to Sonntag-Johnson. GW asserted affirmative defenses, including bad faith and failure to comply with the contract. GW also counterclaimed for an equitable adjustment in administrative service fees and stop-loss coverage premiums based on BSI's failure to disclose Sonntag-Johnson's condition when it applied for coverage.

BSI then moved for partial summary judgment, arguing that GW could not challenge Watson's determination that Sonntag-Johnson's claims were covered under the Plan.

BSI argued that the alleged misrepresentations related to the premium adjustment issue, not the finality of Watson's determination. The court granted BSI's motion, reasoning that GW had no authority to challenge whether a claim was covered under BSI's ERISA Plan and, thus, GW was obligated to reimburse BSI for payments made to Sonntag-Johnson. The court permitted discovery to continue to resolve the remaining issues.

BSI then moved for summary judgment to dismiss GW's counterclaim, which sought to increase the 1991 premium retroactively. BSI argued that GW had extensive information on Sonntag-Johnson's condition when it set the premium for 1991. The court granted BSI's motion. The court reasoned that BSI informed GW of Sonntag-Johnson's medical problems by February 10, 1990, and since the 1991—not the 1990—contract was at issue, GW could have increased the contract rates for 1991 based on their knowledge of Sonntag-Johnson's condition.

GW subsequently moved for summary judgment on two issues. First, GW argued that even if the Plan administrator had discretion, the PNH-related coverage was outside the scope of the contract and, thus, no deference should be given to the Plan administrator; second, GW argued that the plan administrator failed to exercise good faith. The court struck GW's motion as an untimely motion for reconsideration of the court's October 14, 1994 decision.

In its notice of appeal, GW cited only the final partial judgment order granting BSI $85,000 against GW for breach of contract. This was the first order certified as final. Further proceedings on BSI's claim for breach of the duty of good faith were stayed pending any appeal by GW from this judgment.

## NOTICE OF APPEAL

BSI argues that GW has failed to appeal properly because it did not include the October 14 original summary judgment order or the February 27 order striking its motion for reconsideration in its notice of appeal. The ap-

pellate court will review the lower court's order when it is not designated in the notice of appeal if the order prejudicially affects the decision designated in the notice and if the order is entered before the appellate court accepts review. RAP 2.4(b). We interpret the rules liberally to promote justice and facilitate the decision of cases on the merits. RAP 1.2(a); *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995). An appeal from a final judgment brings up most pretrial orders. *Wlasiuk v. Whirlpool Corp.*, 76 Wn. App. 250, 884 P.2d 13 (1994). Here, the previous orders prejudicially affected the final order because BSI's entitlement to relief under the final order was based on these earlier rulings. Thus, review of all orders is proper.

## ERISA PREEMPTION

GW argues that ERISA preempts BSI's claims because the complaint refers to the existence of an ERISA plan and because the stop-loss provisions are not a separate insurance contract, but part of a single agreement that includes the Plan. BSI argues that preemption is unwarranted because its claims are not premised on the Plan and ERISA's policy concerns are not implicated.

ERISA provides for comprehensive federal regulation of employee benefits plans and applies generally to all employee benefit plans sponsored by an employer or employee organization. *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 756, 881 P.2d 216 (1994), *cert. denied*, 115 S. Ct. 2634 (1995). ERISA preempts state laws to the extent they "relate to" any employee benefit plan. 29 U.S.C. § 1144(a). The phrase is construed in accordance with Congress's intent in enacting ERISA—that of providing uniformity in the administration of benefit programs. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987). If the plan is "too tenuous, remote or peripheral," the state law does not "relate to" the plan to warrant a finding of preemption. *Shaw v. Delta*

*Air Lines, Inc.*, 463 U.S. 85, 100 n.21, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983).

Our Supreme Court recently addressed ERISA preemption of contract and fraud claims in *Cutler*, 124 Wn.2d at 757-66. In *Cutler*, plaintiffs were former employees of Phillips Petroleum Company. When Phillips faced a hostile takeover, it decided to sell some of its plants to Cepex American. *Cutler*, 124 Wn.2d at 751-52. The plaintiffs claimed that Phillips had promised that their salary and benefits would not be reduced or eliminated for at least two years after sale and sued Phillips when they were soon after laid off by Cepex. *Cutler*, 124 Wn.2d at 753. The court held that the plaintiffs' lawsuit was precluded because the court's inquiry was directed to the plan, the complaint made specific reference to the existence of an ERISA plan, and Phillips had a pension-defeating motive in terminating their employment. *Cutler*, 124 Wn.2d at 763. But the court also stated that under a Supreme Court case, "this lawsuit is pre-empted because the complaint makes specific reference to existence of a pension plan." *Cutler*, 124 Wn.2d at 763.

The *Cutler* court relied primarily upon *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990), where the Supreme Court held that employees' state law claims were preempted when they directly conflicted with an ERISA cause of action—firing a person for exercising a plan benefits' right. The *Ingersoll-Rand* Court held that when the employer has a pension defeating motive and the court's inquiry was directed to an ERISA plan, preemption was warranted. *Ingersoll-Rand*, 498 U.S. at 140.

GW argues that based on *Cutler* and *Ingersoll-Rand*, BSI's state law claims are preempted because its complaint made several specific references to the existence of a pension plan. The *Cutler* and *Ingersoll-Rand* cases are distinguishable because in both, the employers had a pension defeating motive. Thus, preemption furthered ERISA's goal of providing uniform resolution of disputes for

which an ERISA remedy was available. Rather than basing preemption on the mention of an ERISA plan in the complaint, we choose to apply a holistic approach to ERISA preemption, emphasizing congressional intent and the purpose of ERISA. *See, e.g., N.Y. Conference of Blue Cross v. Travelers Ins. Co.*, 514 U.S. 645, 115 S. Ct. 1671, 1676-77, 131 L. Ed. 2d 695 (1995). We therefore decline to hold that the mere mention of an ERISA plan in a complaint warrants preemption.

GW also argues that ERISA preempts because the court relied on an ERISA plan provision in determining that BSI's Plan administrator had sole authority to determine Plan eligibility. The *Cutler* and *Ingersoll-Rand* courts both found that reliance on an ERISA plan weighed in favor of preemption; but in those cases, ERISA explicitly preempted. Four known cases have addressed the preemption question where, as here, the dispute involves an employer and a reinsurer, a relationship that ERISA does not purport to govern. For example, in *Consumer Benefit Assoc. v. Lexington Ins. Co.*, 731 F. Supp. 1510, 1511 (M.D. Ala. 1990), an insurer sued a reinsurer for breach of contract and fraud. The court did not find preemption, reasoning that the insurer's claims arose out of its reinsurance contract with the reinsurer and that "any breaches between the reinsurer and insurer in no way [affected] the insured's entitlements under the original policy." *Consumer Benefit*, 731 F. Supp. at 1513 (footnote omitted). The court also reasoned that preemption would not further ERISA's purpose because the insurer's state law claims posed no threats of conflict with ERISA. *Consumer Benefit*, 731 F. Supp. at 1516. Finally, the court emphasized that preemption would foreclose relief for the insurer because ERISA's enforcement provision afforded them none. *Consumer Benefit*, 731 F. Supp. at 1516.

Similarly, in *Union Health Care, Inc. v. John Alden Life Ins. Co.*, 908 F. Supp. 429 (S.D. Miss. 1995), the court also found no preemption in a dispute between a self-insured employer and its reinsurer. The court also noted that the

key inquiry is whether the state law reaches a relationship already regulated by ERISA. *Union Health*, 908 F. Supp. at 433. *Accord, General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993). As the *Consumer Benefit's* court reasoned, finding preemption would foreclose relief to parties to a reinsurance agreement. *Union Health*, 908 F. Supp. at 434-35. Since the parties disputed whether the employer properly paid benefits, the reinsurer argued that the claim was related to the ERISA plan because " '[r]eference must be made to the Plan in order for [the reinsurer] or the court to properly determine any liability under the policy[.]' " Rejecting this argument, the *Union Health* court determined that any reference to plan terms would be an incidental relation to an ERISA plan. *Union Health*, 908 F. Supp. at 435.

On the other hand, in *Washington Nat'l Ins. Co. v. Hendricks*, 855 F. Supp. 1542, 1551 (W.D. Wis. 1994), the court found preemption in a dispute between two insurers. In *Hendricks,* however, both parties had direct responsibilities under the plan and under ERISA. *Hendricks,* 855 F. Supp. at 1551. The court distinguished *Consumer Benefit* on this basis, noting that in *Hendricks,* the failure to pay the retrospective premiums actually caused the termination of the insurance agreement that provided for employee benefits. *Hendricks*, 855 F. Supp. at 1551.

Similarly, in *Lake City Employers' Health & Welfare v. Fiduciary Sec. Life Ins. Co.*, 630 N.E.2d 781, 782 (Ohio App. 1993), an employer sued its reinsurer for breach of contract and bad faith when the reinsurer refused to provide stop-loss coverage to an employee's wife who had leukemia. The reinsurer claimed that it was not required to make reimbursements because the employer had failed to submit evidence of insurability and did not follow other plan requirements in determining that the employee and his wife were eligible for coverage. *Lake City*, 630 N.E.2d at 782. The court concluded that ERISA preempted because the claim's resolution required a court to interpret an ERISA plan's provisions. *Lake City*, 630 N.E.2d at 784.

The court distinguished *Consumer Benefit* by noting that ERISA's purpose would be defeated if state courts were to rule on whether a plan participant should be covered under plan guidelines. *Lake City*, 630 N.E.2d at 784.

We believe that this case is more like *Consumer Benefit* and *Union Health* than *Lake City* because this case does not involve interpreting ambiguous ERISA provisions. Rather, any reference to the Plan that state courts must conduct is incidental because the disputes here are those of fact, not complex plan interpretations. More importantly, resolution of this case does not implicate whether the Plan participant should have been covered under the Plan. *Cf. Lake City*, 630 N.E.2d at 784. That determination has already been made. Additionally, the fact that the lower court relied on a Plan provision in making its determination that the Plan administrator had sole authority to decide Plan eligibility is not determinative because it does not constitute a Plan interpretation substantively affecting ERISA law. Moreover, we note the relationship between the insurer and the reinsurer is not one that ERISA purports to govern. *See Consumer Benefit*, 731 F. Supp. at 1513. Thus, the uniformity goal of ERISA is not served by a finding of preemption. Finding no preemption, we consider the merits of this appeal.

## ISSUES OF FACT

GW argues that even if the lower court properly exercised subject matter jurisdiction, it erred in granting BSI's partial summary judgment motion because BSI's discretion to administer the Plan is limited. BSI contends that GW cannot challenge Watson's eligibility determination because this issue has already been decided in federal court and because GW was not a party to the Plan. Alternatively, BSI claims that GW is barred by collateral estoppel or bound by its oral assurances.

■ We believe that GW has standing to challenge BSI's eligibility determination in terms of its contractual obliga-

tion based on the plain language of its agreement with BSI, which provides that GW shall reimburse BSI only for benefit payments made "under the provisions of the Plan." In other words, GW is only contractually obligated to reimburse BSI when benefits are paid according to the Plan, not whenever the Plan administrator determines the beneficiary is eligible. Thus, by the very terms of the agreement, GW can challenge BSI's determination of Sonntag-Johnson's eligibility to the extent that it implicates GW's contractual obligation to provide the stop-loss coverage.

We note that the opposite conclusion could lead to unfair and absurd results. An administrator could randomly determine eligibility determinations forcing the reinsurer to pay, despite facts indicating that the employee was ineligible under the Plan and knowing that the reinsurer would have no recourse to challenge her decision. The requirements for eligibility to which the reinsurer contracted would thus be rendered unenforceable. We therefore reverse the court's original summary judgment determination holding that GW has no authority to challenge BSI's determination of plan eligibility as it relates to GW's obligation to fulfill the terms of the reinsurance contract. Such a finding is contrary to the contract terms and to public policy. We emphasize, however, that GW's ability to challenge the determination is limited to its own agreement with BSI and in no way affects Sonntag-Johnson's right to receive benefits under the Plan.

■ BSI alternatively argues that GW is collaterally estopped from challenging Watson's eligibility determination because the federal court decided this issue. Collateral estoppel bars a party from relitigating an issue if: (1) the issue presented in the second case is identical to that presented in the first; (2) the prior adjudication ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the application would not be unjust. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 561-62, 852 P.2d 295 (1993).

Here, the first element of collateral estoppel is not met because the federal court decided only that GW could not be sued by Sonntag-Johnson because the Plan had ultimate authority concerning claims. Here, GW does not refute this lack of authority but claims that it can deny BSI reimbursement based on a disagreement with BSI's decision. Thus, GW argues that it has standing to dispute this issue in the context of a dispute with BSI, not with Sonntag-Johnson. GW's ability to make eligibility determinations in a suit by Sonntag-Johnson creates a distinct issue from GW's ability to dispute BSI's eligibility determinations to the extent it must reimburse BSI. This claim is thus meritless.

BSI also claims that GW has waived this issue by affirmatively representing to Sonntag-Johnson that it would reimburse her. This is a question of fact. While BSI presented evidence that GW promised to reimburse Sonntag-Johnson, GW's Cindy Nelson disputed this claim. Additionally, any affirmative representations of GW made in 1990 were arguably done so before GW had all facts. This is an inappropriate basis for affirming the grant of summary judgment.

## OTHER CLAIMS

■ GW argues that the court erred by striking its February 17 motion for summary judgment and refusing to revise its original summary judgment order finding that GW had no authority to challenge the Plan administrator's eligibility determination because the initial ruling was a nonfinal, interlocutory order subject to revision at any time. Because we reverse the lower court's October 14 summary judgment ruling, this issue is moot.

■ GW also assigns error to the court's dismissal of its counterclaim but does not provide argument on this issue in its opening brief. We therefore consider this issue waived.

GW has requested fees on appeal under 29 U.S.C. § 1132(g)(1). Such fees are not available because GW is not

a participant, beneficiary, or fiduciary under ERISA and because we reject its ERISA claim. BSI has also requested fees. *See Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Because we reverse the original summary judgment order, we deny BSI fees on appeal.

Affirmed in part, reversed in part, and remanded for further proceedings.

KENNEDY, A.C.J., and ELLINGTON, J., concur.